# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |
|---|---|
| SAM RESTAURANTS, INC. d/b/a CAROLINA'S DINER, on behalf of itself and all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>UNITED SUGAR PRODUCERS & REFINERS COOPERATIVE F/K/A UNITED SUGARS CORPORATION, AMERICAN SUGAR REFINING, INC., ASR GROUP INTERNATIONAL, INC., DOMINO FOODS, INC., MICHIGAN SUGAR COMPANY, AND COMMODITY INFORMATION, INC.<br><br>      Defendants. | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff SAM RESTAURANTS, INC. d/b/a CAROLINA'S DINER ("Plaintiff"), individually and on behalf of the Commercial Indirect Purchaser Classes defined below, bring this class action to recover treble damages, injunctive relief, and any other relief as appropriate, based on violations of the Sherman Act and various state antitrust and consumer protection laws by United Sugar Producers & Refiners f/k/a United Sugars Corporation ("United"), American Sugar Refining, Inc. ("ASR"), ASR Group International, Inc. ("ASR Group"), Domino Foods, Inc. ("Domino," together with ASR Group and ASR, "ASR/Domino"), Michigan Sugar Company ("Michigan Sugar," together

with United, and ASR/Domino, the "Producing Defendants"), and Commodity Information, Inc. ("Commodity") (Producing Defendants and Commodity are, collectively, "Defendants"), and allege, upon their personal knowledge as to themselves and each of their own actions, and otherwise upon information and belief, including the investigation of counsel, as follows:

## NATURE OF THE ACTION

1. Since at least January 1, 2019, Defendants and their co-conspirators conspired and combined to fix, raise, maintain, and stabilize prices for Granulated Sugar[1] sold throughout the United States.

2. The Producing Defendants—who are otherwise horizontal competitors—are among the largest producers and sellers of Granulated Sugar in the United States, especially after Defendant United's acquisition of former competitor Imperial Sugar Company ("Imperial") in November 2022.

3. In furtherance of this conspiracy, among other things, the Producing Defendants engaged in price signaling and exchanged competitively sensitive information about prices, capacity, sales volume, and demand, including through Defendant Commodity. These actions were taken with the intended purpose and effect of increasing Granulated Sugar Prices throughout the United States.

---

[1] As defined below, "Granulated Sugar" is ordinary, white, table sugar that is made from cane sugar or beet sugar that has undergone a refining process to remove the molasses and extract the sucrose and create relatively large, uniform crystals.

2

4.     As a result of Defendants' combination and conspiracy, Granulated Sugar prices in the United States have been artificially inflated throughout the Class Period, causing Plaintiff and other commercial, industrial, and institutional indirect purchasers ("Commercial Indirect Purchasers") to suffer overcharges.

## JURISDICTION AND VENUE

5.     This action arises under Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1 and 3), and Section 16 of the Clayton Act (15 U.S.C. § 26), as well as the antitrust, unfair competition, and consumer protection laws of various states. The Sherman Act claim is for injunctive relief, costs of suit, and reasonable attorneys' fees; the various state claims seek to recover injunctive relief, compensatory damages, treble damages, costs of suit, and reasonable attorneys' fees.

6.     This Court has subject matter jurisdiction pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, and 28 U.S.C. §§ 1331, 1333(d), 1337(a), and 1367.

7.     This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and Plaintiff is a citizen of North Carolina and thus is diverse from Defendants, all of whom are either residents of, incorporated in, or have their principal places of business in Delaware, Florida, Michigan, Minnesota, or Utah.

8.     This Court also has personal jurisdiction over all Defendants, and venue in this District is proper, under the combination of 15 U.S.C. §22 and 28 U.S.C. §1391(b),

3

(c), and (d). A substantial part of the events or omissions giving rise to the claims occurred in this District. On information and belief, each Defendant resides, transacts business, is found, or has an agent in this District.

9.     Defendants' activities were within the flow of, and were intended to and did have a substantial effect on, interstate commerce of the United States. Defendants' products and services are sold in the flow of interstate commerce.

10.    By reason of the unlawful activities alleged herein, Defendants' unlawful activities substantially affected commerce throughout the United States, causing injury to Plaintiff and the geographically dispersed class members. Defendants, directly and through their agents, engaged in activities affecting all states.

11.    Defendants' conspiracy, wrongful anticompetitive conduct, and substantial anticompetitive effects described herein proximately caused injury to Plaintiff and members of the proposed Classes.

## THE PARTIES

*Plaintiff*

12.    Plaintiff SAM Restaurants, Inc. d/b/a Carolina's Diner is a North Carolina corporation with its principal place of business in Greensboro, NC. During the Class Period, Plaintiff purchased Granulated Sugar indirectly from one or more Defendants in North Carolina and suffered antitrust injury as a result.

*Defendants*

13.      Defendant United is a Minnesota corporation with its principal place of business in Edina, Minnesota. United has four member-owners: United States Sugar Corporation ("U.S. Sugar"); American Crystal Sugar Company; Minn-Dak Farmers Cooperative; and Wyoming Sugar Company, LLC.[2] It sells Granulated Sugar primarily under the brand name Crystal Sugar.[3] According to its website: "From a sugar-supply standpoint, we are the most reliable sugar producer in the U.S. due to our volume capabilities and coast-to-coast distribution network. Unlike other sugar suppliers, our sales team, customer service team and quality assurance team are solely focused on sugar, no other commodities."[4]

14.      Defendant ASR is a privately held Florida corporation with its principal place of business in West Palm Beach, Florida. It is a global producer and seller of Granulated Sugar.

15.      Defendant ASR Group is a privately held Florida corporation with its principal place of business in West Palm Beach, Florida. It is a global producer and seller of Granulated Sugar. On its website, ASR Group states: "As the world's largest refiner and marketer of cane sugar, we sell our branded products and service our customers in every key channel, including industrial, grocery and e-commerce, food service, and specialty."[5]

---

[2] https://unitedsugarpr.com/who-we-are/our-members/ (last accessed 3/16/24).
[3] https://unitedsugarpr.com/product-category/retail-products/ (last accessed 3/16/24).
[4] https://unitedsugarpr.com/faq/ (last accessed 3/16/24).
[5] https://www.asr-group.com (last accessed 3/16/24).

ASR Group further claims: "Our acquisitions and strategic partnerships have positioned us as a key

16.     Defendant Domino is a Florida corporation with its principal place of business in West Palm Beach, Florida. Domino is the marketing and sales subsidiary for ASR and ASR Group's Granulated Sugar business and is a global producer and seller of Granulated Sugar.

17.     ASR/Domino owns and operates sugar refineries in Crockett, California, Chalmette, Louisiana, Baltimore, Maryland, and Yonkers, New York. It is a global producer and seller of Granulated Sugar. ASR/Domino sells Granulated Sugar in the United States under the brands Domino, C&H, and Florida Crystals, as well as internationally under the brands Redpath, Tate & Lyle, Lyle's, and Sidul.[6]

18.     Defendant Michigan Sugar is a Michigan corporation with its principal place of business in Bay City, Michigan. It is a cooperative comprising 900 sugar beet grower-owners, and is a global producer and seller of Granulated sugar under the brand names Pioneer Sugar and Big Chief Sugar.[7] Michigan Sugar owns and operates sugar beet processing facilities in Bay City, Caro, Croswell and Sebewaing, Michigan; it also owns warehouse facilities in Bay City, Michigan, Carrollton, Michigan, Fremont, Ohio, and

---

[6]     https://www.asr-group.com/about-us/our-owners     (last     accessed     3/16/24); https://www.foodbusinessnews.net/articles/836-american-sugar-refining-unveils-new-brand-name-asr-group (last accessed 3/16/24).

[7]         https://www.michigansugar.com/     (last         accessed         3/16/24); https://www.michigansugar.com/about-us/ (last accessed 3/16/24).

Findlay, Ohio, as well as a production facility in Toledo, Ohio and an agricultural research center in Bay County, Michigan.[8]

19.     Defendant Commodity is a Delaware corporation with its principal place of business in Orem, Utah. Commodity publishes a monthly report called the "Domestic Sugar Monthly Report" that contains information about, among other things, sugar supply and demand and sugar spot pricing guidance. Throughout the Class Period, Defendant Commodity (by and through its principals and employees including but not limited to Richard Wistisen), facilitated exchanges of detailed, non-public, competitively sensitive information regarding, among other things, prices (including prospective prices), capacity, sales volume, and demand amongst the Producing Defendants in furtherance of the conspiracy.

AGENTS & CO-CONSPIRATORS

20.     Various co-conspirators, some known and some unknown, willingly participated in and acted in furtherance of the alleged conspiracy, including Richard Wistisen.

21.     Each Defendant was a co-conspirator with the other Defendants and committed overt acts in furtherance of the conspiracy alleged herein in the United States and in this District.

---

[8] https://www.michigansugar.com/about-us/locations/ (last accessed 3/16/24).

22.     Defendants participated in the alleged conspiracy through the acts of their officers, directors, agents, partners, employees, representatives, affiliates, subsidiaries, and companies they acquired through mergers and acquisitions, for whom they are liable.

23.     At all relevant times, other known and unknown corporations, individuals, and entities willingly conspired with Defendants in their unlawful and illegal conduct. Numerous individuals and entities participated actively during the course of, and in furtherance of, the scheme described herein. The individuals and entities acted in concert through, amongst other things, joint ventures, and by acting as agents for principals in order to advance the objectives of the scheme to benefit Defendants and themselves by artificially inflating Granulated Sugar prices.

24.     Whenever reference is made to an act of any organization, corporation, or other business entity, the allegation means that the entity engaged in the act by or through its officers, directors, agents, partners, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.

## FACTUAL ALLEGATIONS

### A.     The U.S. Granulated Sugar Market.

25.     "Granulated Sugar," also known as "white sugar" or "table sugar," is a product made from cane sugar or beet sugar that has undergone a refining process to remove molasses and extract the sucrose ($C_{12}H_{22}O_{11}$), which is then ground into relatively large, uniform crystals typically of about 0.6mm. Although refined sugar/sucralose is

8

sometimes sold as a liquid or powder, Granulated Sugar is the predominant form sold and accounts for approximately 80% of all refined sugar sold.[9]

26. In the United States, sugarcane is only grown in tropical and semitropical climates such as Florida, Louisiana, and Texas, whereas sugar beets are grown in a range of temperate climates such as California, Colorado, Idaho, Michigan, Minnesota, Montana, Nebraska, North Dakota, Oregon, Washington, and Wyoming. After harvesting, sugarcane is first converted to "raw" sugar at sugar mills, which is then later refined into granulated sugar at refineries. Sugar beets, on the other hand, are typically processed in a single facility where they are converted into refined sugar directly. However, despite these differences, Granulated Sugar made from beets and Granulated Sugar made from sugarcane are chemically indistinguishable.

27. Granulated sugar is a primary dry good and staple foodstuff commonly used by both commercial/industrial/institutional users (*e.g.*, restaurants, bakeries, confectioneries, and food and beverage manufacturers) and end-consumers as an ingredient to sweeten foods and drinks. It is also used in some industrial processes, such as the production of medications and bioplastics, and to make ethanol and other biofuels.

---

[9] *See* Proposed Findings of Fact of the United States [Redacted], U.*S. v. United States Sugar Corp., et al*., No. 21-cv-1644-MN (D. Del.) (ECF 219) ¶ 25.

According to one global estimate, approximately 75% of Granulated Sugar is used for food products while 25% is used for biofuels and other industrial applications.[10]

28.    While some larger commercial, industrial, and institutional users purchase Granulated Sugar directly from the Producing Defendants either for resale or for manufacturing purposes (*i.e.*, "Direct Purchasers"), many commercial, industrial, and institutional entities purchase Granulated Sugar indirectly through intermediaries such as sugar wholesale distributors, food service distributors, or grocery retailers. These latter types of purchasing entities, which includes Plaintiff, are referred to herein as "Commercial Indirect Purchasers."

29.    Granulated Sugar is a commodity product with little or no product differentiation based on processor.[11] Given its history and cultural importance, it is generally considered one of the most valuable agricultural commodities in the world.[12] Sugar futures contracts are traded on the Intercontinental Exchange ("ICE") as "White Sugar" under the symbol "W." According to ICE: "The White Sugar futures contract is used as the global benchmark for the pricing of physical white sugar. It is actively traded

---

[10]

https://engagethechain.org/sites/default/files/commodity/Ceres_EngageTheChain_Sugarcane.pdf (last accessed 3/16/24).

[11] *See, e.g., Sugar Inst. v. United States*, 297 U.S. 553, 572 (1936) (noting trial court's finding that refined sugar was a thoroughly standardized commodity in physical and chemical properties) (internal quotation marks omitted).

[12] https://www.iisd.org/ssi/commodities/sugar-coverage/ (last accessed 3/16/24).

by the international sugar trade, sugar millers, refiners, and end-users (manufacturers) as well as by managed funds and both institutional and short-term investors."[13]

30.     The U.S. Granulated Sugar industry is projected to reach an estimated $13.5 billion in revenue in 2024.[14]

31.     During the Class Period, the Producing Defendants, directly or through their subsidiaries or other affiliates, sold Granulated Sugar throughout the United States in a continuous and uninterrupted flow of interstate commerce, including through, in, into, or from this District.

32.     During the Class Period, the Producing Defendants collectively controlled a dominant share of the United States Granulated Sugar market. Presently, the Producing Defendants have an estimated combined market share of at least 68%, though likely higher, in the Granulated Sugar market in the United States.[15] For example, upon hearing the announcement regarding Imperial's acquisition, one Producing Defendant noted "they view this as 1 less competitor and now 3 companies account for 75% of the market."[16]

---

[13] https://www.ice.com/products/37089080/White-Sugar-Futures (last accessed 3/16/24).

[14] https://www.ibisworld.com/united-states/market-research-reports/sugar-processing-industry/ (last accessed 3/16/24) (note: this estimate reflects NAICS Industry Code 3131, which may include raw and liquid sugar).

[15] *See* Defendant United's Proposed Findings of Fact, U.*S. v. United States Sugar Corp., et al.*, No. 21-cv-1644-MN (D. Del.) (ECF 231) ¶177.

[16] Email from ASR/Domino's Adam Whittaker dated 3/25/21, *U.S. v. United States Sugar Corp., et al.*, No. 21-cv-1644-MN (D. Del.) (ECF 207-24).

11

**B.** **The Sugar Industry's Long History of Collusion.**

33. For more than 80 years, the domestic refined sugar industry has been marked by repeated violations of the antitrust laws, including some involving conduct remarkably like that alleged by Plaintiff here.

34. In 1936, the United States Supreme Court upheld a lower court ruling which found that the major refined sugar producers unreasonably restrained trade by, among other things, creating the "Sugar Institute," an industry trade association, which enabled them to promulgate member rules whereby "defendants agreed to sell, and in general did sell sugar only upon open prices, terms and conditions publicly announced in advance of sales, and they agreed to adhere and in general did adhere without deviation, to such prices, terms and conditions until they publicly announced changes."[17]

35. In 1948, Sugar producers in California were accused of conspiring with one another to fix the prices they paid to acquire sugar beets from growers.[18] After a trial on the merits, the court found in favor of the plaintiffs, who were awarded treble damages and attorneys' fees, which was later affirmed by the Ninth Circuit.[19]

36. In 1978, sugar producers—again accused of anticompetitive conduct— entered into a consent decree with the United States Department of Justice ("DOJ") where they were enjoined from, among other things, entering into any future agreements or combinations to: (a) "[f]ix, raise, maintain or stabilize the prices, terms or conditions for

---

[17] *United States v. Sugar Institute*, 297 U.S. 553, 582-83 (1936).

[18] *Mandeville Island Farms v. Am. Crystal Sugar Co*., 334 U.S. 219, 221 (1948).

[19] *Am. Crystal Sugar Co. v. Mandeville Island Farms*, 195 F.2d 622, 626 (9th Cir. 1952).

the sale of refined sugar"; (b) "[g]ive any prior notice of or announce in advance any change or contemplated change in prices, terms or conditions for the sale of refined sugar"; (c) "[d]irectly communicating to any other refiner information concerning Future Prices"; or (d) "[r]equesting, requiring or coercing any third person….to communicate to any other refiner, information concerning Future Prices."[20]

37.     Notably, the DOJ's and Federal Trade Commission's ("FTC") joint "Guidelines for Collaborations Among Competitors"[21] and the "Merger Guidelines"[22] referenced therein specifically identify "Prior Actual or Attempted Attempts to Coordinate" as a "Primary Factor" in determining whether practices such as information sharing are likely to increase the risk of coordinated, anticompetitive conduct.

## C.     Defendants Enter into (Yet Another) Agreement, Combination, or Conspiracy to Artificially Raise, Fix, Maintain, or Stabilize Granulated Sugar Prices.

38.     Since at least 2019, the Producing Defendants have had an ongoing agreement to artificially raise, fix, stabilize, or maintain Granulated Sugar prices in the United States. To effectuate this agreement, the Producing Defendants engaged in price signaling and exchanges of detailed, accurate, non-public, competitively sensitive

---

[20] *United States v. Great W. Sugar Co.*, No. 74-2674 SW, 1978 WL 1399, at *2 (N.D. Cal. Sept. 13, 1978).

[21] https://www.ftc.gov/sites/default/files/documents/public_events/joint-venture-hearings-antitrust-guidelines-collaboration-among-competitors/ftcdojguidelines-2.pdf              (last accessed 3/16/24).

[22] https://www.ftc.gov/system/files/ftc_gov/pdf/2023_merger_guidelines_final_12.18.2023.pdf (last accessed 3/16/24).

information (including forward-looking price information) with one another, both directly and through Defendant Commodity and its principals and employees.

39. As revealed by the DOJ, Defendants have participated in these exchanges of competitively sensitive information for years.[23] There is no innocent, economically rational reason for the Producing Defendants to share this competitively sensitive information. Rather, they have exchanged this competitively sensitive information for the explicit purpose of carrying out their unlawful agreement and to avoid competition on the merits.

40. Commodity purports to offer analysis of the sugar industry, yet it has no public presence—it does not advertise its services to the public, nor does it even have a website—and does not appear to market its "Domestic Sugar Monthly Report" or other analyses to anyone but a select few (*i.e.*, the Producing Defendants or other refiners who share their competitively sensitive information). Notably, they are not made available to purchasers of Granulated Sugar and others in the sugar supply chain, thereby giving the Producing Defendants an unfair competitive advantage over other market participants (*i.e.*, their suppliers and customers).

41. The information Commodity gathers includes the Producing Defendants' current pricing, future or forward pricing, pricing strategies, copy size/yields, sold positions, spot prices, and contract prices. This information is not obtained through anonymous surveys or polling, and the information Commodity shares with the Producing

---

[23] *See* Proposed Findings of Fact of the United States [Redacted], U.*S. v. United States Sugar Corp., et al.*, No. 21-cv-1644-MN (D. Del.) (ECF 219) ¶¶ 140-51.

14

Defendants is not aggregated. Instead, the Producing Defendants each regularly share competitively sensitive information regarding pricing and sold positions with Commodity, who then immediately shares that non-aggregated, non-anonymized competitively sensitive information with the other Producing Defendants. These reciprocal exchanges occurred rapidly, oftentimes within hours of receipt, and that information was used by the Producing Defendants in deciding how much to charge for their Granulated Sugar.

42. Moreover, the Producing Defendants themselves understand that the sharing of this competitively sensitive information is anticompetitive and violates the spirit and purpose of the antitrust laws. As discussed below, the Producing Defendants' codes of ethics/business conduct explicitly acknowledge that agreements to fix prices are unlawful and that information regarding prices and sales should not be shared, directly or indirectly, with competitors. But that is precisely what the Producing Defendants have done.[24]

43. Afterwards, pursuant to their unlawful agreement, the Producing Defendants used this competitively sensitive information that they exchanged with one another through Commodity when deciding how much to charge their customers for Granulated Sugar during the Class Period.

44. Moreover, Defendants understood that by sharing this competitively sensitive information with one another, they could hinder their customers' ability to

---

[24] The Producing Defendants' Granulated Sugar prices and sold positions (*i.e.*, the percentage of its crop that is already booked for the fiscal year) comprises confidential information. It derives independent value because it is not known by third parties, including each of the Producing Defendants' respective competitors or the general public.

15

negotiate with them on price. For example, in a deposition taken on April 18, 2022, United's Executive VP of Sales, Dirk Swart, testified that customers use alternative suppliers' prices to leverage down prices from United, but then acknowledged that he "could better avoid these destructive situations" when he "had better information about what [his] competitor's actual prices were."

45. The purpose and goal of these information exchanges is clear: to avoid competing with one another by ensuring they did not undercut each other's prices, thus maintaining Granulated Sugar prices that are higher than they otherwise would be in a competitive market. As the dominant producers in the sugar industry, the Producing Defendants are not competitively restrained by smaller market participants as the Producing Defendants collectively account for the majority of Granulated Sugar production and sales in the United States.

46. Each of the Producing Defendants—ASR/Domino, Michigan Sugar, and United—participated in these exchanges of competitively sensitive information. For example:

(a) United: September 21, 2020 – Mr. Wistisen emailed United's Mr. Speece and ASR/Domino's Mr. Henderson within six minutes of each other, asking them about their current prices and if they will be "firm to higher." Within a day, both competitors had reported their prices and sold positions, and Mr. Wistisen communicated each respective competitor's report to the other.

(b) ASR/Domino: November 16, 2020 – Mr. Wistisen contacted United's Eric Speece and asked, "Where would you put spot and forward beet prices?"; approximately 38 minutes later, Mr. Wistisen asked Domino's Alan Henderson, "Where would you put prices and cane

16

coverage?" Both Mr. Speece and Mr. Henderson responded that same day with pricing information.

(c) <u>Michigan Sugar:</u> August 18, 2020 – Mr. Wistisen emails ASR/Domino's Mr. Henderson stating: "My goodness, what a difference a month makes. Michigan 85+% booked, Western 75-%." In another email on September 21, 2020, Mr. Wistisen reached out to United's Mr. Speece asking: "Anything new of interest on the pricing front? Hearing beets well sold, except possible NSM (80-85%), and prices firm to higher. Michigan $38.5+…. ." On June 17, 2021, Mr. Wistisen emailed ASR/Domino's Mr. Henderson reporting crop size/yield information, including that "Michigan: above average crop, 50% excellent development…drop up 1.50 tpa above average." And in yet another email on August 17, 2020, Mr. Wistisen shared Michigan's crop yield information with ASR/Domino's Mr. Henderson, stating "Just getting started on crop updates. Michigan: bumped from 29 tpa to 29-30 tpa."[25]

47.    The information exchanges between the Producing Defendants and Commodity were specifically coordinated such that the Producing Defendants would timely receive each other's information. For example:

(a) November 17, 2020 – The day after the November 16, 2020 emails referenced above (where Mr. Wistisen contacted ASR/Domino and United requesting and later receiving pricing information), Mr. Wistisen emailed United's Mr. Speece and relayed the specific pricing information that Domino's Mr. Henderson shared with him the day prior: "ASR saying prices keep climbing: $46 spot all locations….Waiting to hear back from most contacts… ." Mr. Wistisen also emailed Mr. Henderson that same day and forwarded the pricing information shared by Mr. Speece.

(b) September 21, 2020 – Mr. Wistisen emailed United's Mr. Speece and ASR's Mr. Henderson within six minutes of each other, asking them about their current prices and if they will be "firm to higher." Within

_____

[25] On other occasions, Mr. Wistisen told both United and ASR/Domino that the information he provided on Michigan Sugar came directly from them. For example, when discussing pricing with Domino's Mr. Henderson, he stated he did not yet have Michigan Sugar's pricing, but assured him "I hope to talk with them [Michigan Sugar] on Fri./Mon."

a day, both competitors had reported their prices and sold positions, and Mr. Wistisen communicated each respective competitor's report to the other. He also stated: "Waiting to confirm from Michigan [Sugar]."

48. The pricing information exchanged included not only current prices but prospective prices and sold positions. For example:

(a) March 3, 2020 – After attending the International Sweetener Colloquium the week before in Palm Springs, California, ASR/Domino's Mr. Henderson reported back to his colleagues, among other things, their competitors pricing plans for Fiscal Year 2021: "Michigan firm at $38.50 for 2021. United took prices up to $36.50 FOB."

(b) September 21, 2020 – Mr. Wistisen reported to ASR/Domino's Mr. Henderson: "Michigan [Sugar] holding forecasts unchanged, sugars nearing 16%, factories running well, stockpiling on Oct. 19th," later also adding that Michigan Sugar's pricing was at "$38.5+, selective selling."

(c) February 17, 2021 – Mr. Wistisen exchanged emails with ASR/Domino's Mr. Henderson about United's prospective pricing strategy, and Mr. Wistisen responded: "Long conversation with United: won't set FY22 price list until March, but the plan remains to hold steady at $36.50 and $38.50 based on demand…Selling FY21 firm, good activity, little to no competition from NSM or Western."

(d) February 15, 2021 – ASR/Domino's Mr. Henderson emailed Mr. Wistisen and reported: "We [Domino] are still at $36.50 and $38.50 with zero problems selling at those values. I do not anticipate any changes to our prices… ."

(e) May 18, 2021 – Mr. Wistisen informed ASR/Domino's Mr. Henderson: "Just talked with United: prices unchanged…[b]ut expect big action over the next month, 20+% add to bookings, and at that time expect to raise prices, and not by just a dollar."

(f) July 12, 2021 – Domino's Mr. Henderson wrote his colleagues Mr. Whittaker and Mr. Dahlman again forwarding United's pricing information, stating: "FYI below……United price increase. Rich

18

[Wistisen] is thinking $2.00 increase but no official word yet. Let's see if we can hunt something down."

49.     The competitively sensitive information exchanged through Commodity was accurate so that the Producing Defendants could rely upon it. For example:

(a) February 17, 2021, Domino's Mr. Henderson wrote his colleague, Mr. Whittaker, forwarding information about competitor United received by Mr. Wistisen, noting, "United is usually pretty upfront with Rich."

50.     It also clear that these communications were expressly and intentionally used for price signaling purposes. For example:

(a) September 2019 – Defendant United's CEO stated that "we tried to push prices higher" by putting "an expiration date" on pending offers, which he further explained "sen[t] a message" to "competitors that we were not interested in allowing the market to slip lower." Similar documents unveiled by DOJ further reveal a Domino executive stating, "[w]e need to signal to the market that we're going to maintain price," one executive stating that the "main downside" to lowering an Imperial bid "would be snatching something from United just as they are starting to show some upside price movement."

(b) January 8, 2020 – ASR's Rob Sproull emailed his colleague Alan Henderson stating: "I think it's really important we signal to the market that there's still going to be tightness…We need to signal to the market that we're going to maintain price, especially for the Oct-Dec quarter."

(c) June 18, 2020 – ASR Group's Alan Henderson emailed his colleague, Adam Whittaker regarding a quote needed for major customer Piedmont Candy Corporation, where he stated he "would love to get aggressive here [on pricing]" but that "[w]e would like to avoid sending a signal out to competitors that we are chasing business and lowering price off the standard $41.00 bulk basis."

(d) November 16, 2020 – United's Mr. Swart emailed his colleague Mr. Speece, stating: "I'd like him [Wistisen] to hear $36.50/$38.00 and probably moving higher based on the strength of the position."

19

(e) January 20, 2021 – United's Eric Speece emailed his colleague at United, Dirk Swart, that one competitor was selling at too low a price and suggested, "May want to communicate pricing earlier than the colloquium to send a msg. I'll plan on calling him tomorrow as it is always easier than black and white. Let me know if there are any key messages you would like me to relay on."

51.     The Producing Defendants were careful to avoid detection of their unlawful agreement. For example, in one email United's Mr. Speece states while discussing an information exchange: "I will call him rather than put in writing."

**D.     The Structure and Characteristics of the Sugar Industry Make It Especially Susceptible to Collusion and Render the Conspiracy Economically Plausible.**

52.     Several characteristics of the domestic sugar industry cause it to be especially susceptible to collusion and render the conspiracy economically plausible.

53.     First, Granulated Sugar is a standardized, homogenous commodity product whose inputs and outputs are subject to repetitive purchases/sales. As such, it is much easier: (a) for vendors to come familiar with other bidders and for competitors to share the work on future contracts; and (b) for competing firms, such as the Producing Defendants, to reach an agreement on a common price structure because their products are fungible and have common features and qualities.

54.     Second, the United States market for Granulated Sugar is highly concentrated. Not only did the Producing Defendants collectively have a dominant share of the market during the Class Period, but none of the remaining Granulated Sugar producers had a market share remotely approaching that of the Producing Defendants. Moreover, the market became even more concentrated once United acquired Imperial in

20

2022. United and ASR/Domino have related ownership interests: United, through owner-member U.S. Sugar, has an ownership interest in Sugar Cane Growers Cooperative, which is part owner of Domino.

55.     Third, the domestic sugar industry is almost entirely vertically integrated, with the Producing Defendants and other sugar producers owning or tightly controlling almost all aspects of producing sugarcane and sugar beets, processing and refining them into Granulated Sugar, and marketing Granulated Sugar.

56.     Fourth, the market for Granulated Sugar in the United States is characterized by inelastic demand as there are no meaningful substitutes for Granulated Sugar. Thus, the Producing Defendants knew they could demand higher prices when Granulated Sugar supplies were low without the fear of consumers switching to another product.

57.     Fifth, the Producing Defendants benefited from the United States Department of Agriculture's ("USDA") Sugar Program, which—although it did not set, approve, or otherwise regulate actual sales prices for Granulated Sugar—limited the number of sources of raw sugar from which Granulated Sugar could be refined and protected the Producing Defendants from foreign competition by limiting imports. As a result of this program, the Producing Defendants know they can charge higher prices for Granulated Sugar as their sold positions increase because there will be little to no additional competitive product available in the market to constrain them.

58.     Sixth, there are high barriers to entry which prevent *de novo* entry into the Granulated Sugar market as a producer. A new entrant into the market would face costly

and lengthy start-up costs, including large capital investments associated with constructing processing plants, refiners, transportation infrastructure, skilled labor, creation of sugarcane/sugar beet farms or contracts with sugarcane/sugar beet farmers, and regulatory approvals. In addition, most existing competitors, like the Producing Defendants, are large, vertically integrated operations that not only have long-standing customer and supplier relationships, but they also benefit from economies of scale and access to loans and production allotments offered by the USDA only to the larger, vertically integrated producers.

59.     Seventh, the Producing Defendants each were members, either directly or through one of their affiliated companies, of various trade associations—*e.g.*, the Sugar Association[26] and the American Sugar Alliance[27]—which afforded them ample opportunities to collude during the Class Period. For example, the American Sugar Alliance holds an annual symposium sponsored and attended by the Producing Defendants where attendees not only participate in industry discussions, but also informal activities such as golf outings.

## E.    Defendants' Agreement Successfully Inflated Sugar Prices During the Class Period.

60.     In the past 20 years, the price of Granulated Sugar has doubled on an indexed basis. There is no economically rational basis for this rate of price increase.

---

[26] https://www.sugar.org/about/members/ (last accessed 3/16/24).
[27] https://sugaralliance.org/asa-symposium-2023/asa-program (last accessed 3/16/24).

61.     During the Class Period in particular, Granulated Sugar prices rose significantly in a manner that did not reflect prior pricing patterns and despite the fact that supply did not decline.

62.     The following is a chart of the producer price index for the Sugar Manufacturing sector during the Class Period and the five years preceding it:



63.     Commodity prices for sugar have also increased dramatically during the Class Period.  The following is a chart showing commodity sugar prices in USD/lb for the last five years:

23



64.     As these charts demonstrate, Granulated Sugar prices increased at a faster rate shortly after the alleged conspiracy began in or around January 2019.

## ANTITRUST INJURY & DAMAGES

65.     Defendants' anticompetitive conduct had the following effects, among others:

(a)  competition has been restrained or eliminated with respect to Granulated Sugar;

(b)  the prices paid for Granulated Sugar have been fixed, raised, stabilized, or maintained at artificially inflated levels;

(c)  indirect purchasers of Granulated Sugar have been deprived of free and open competition; and

(d)  indirect purchasers of Granulated Sugar, including Plaintiffs and the Commercial State Law Class defined below, paid artificially inflated prices.

66.     The purpose and effect of Defendants' anticompetitive course of conduct was to stifle competition and to raise, fix, or maintain the price of Granulated Sugar. As a direct

24

and foreseeable result, during the Class Period, Plaintiff and class members paid supracompetitive prices for Granulated Sugar.

67.    These overcharges are exactly the type of injuries the antitrust laws were intended to forestall.

68.    By reason of the antitrust and consumer protection violations alleged herein, Plaintiff and class members have sustained injury to their business or property, and as a result of suffered damages.

69.    The Granulated Sugar that Plaintiff and class members purchased were in substantially the same form at the time of purchase as when they were initially sold by the Producing Defendants. As such, Granulated Sugar and the associated overcharges resulting from Defendants' anticompetitive conduct follow a physical chain from the Producing Defendants to Plaintiff and class members that can be traced.

70.    Generally accepted economic principals dictate that an overcharge at the top of a multi-level distribution chain will result in higher prices at every level of distribution below. Therefore, at least some portion of an anticompetitive overcharge will be passed on by intermediaries, such as distributors, to end users.

71.    Here, while direct purchasers of Granulated Sugar were the first to pay supra-competitive prices, some or all of the overcharges were passed along the distribution chain and absorbed by downstream purchasers, including Plaintiff and class members, when they purchased Granulated Sugar from distributors, wholesalers, or retailers for commercial use.

72.     Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the overcharge passed through the various levels of distribution. As a result, the economic harm to Plaintiff and class members can be readily quantified.

## CLASS ALLEGATIONS

73.     Plaintiffs bring this lawsuit under Federal Rules of Civil Procedure 23(a), (b)(1) and (b)(2) on behalf of themselves and as representatives of a class of Commercial Indirect Purchasers seeking injunctive relief (the "Nationwide Injunctive Relief Commercial Indirect Class") defined as follows:

> All persons or entities who indirectly purchased Granulated Sugar from the Producing Defendants or their co-conspirators in the United States during the Class Period for use or resale in their business or organization.

74.     In addition, Plaintiffs bring this lawsuit under Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of themselves and all others similarly situated seeking damages as well as equitable relief, on behalf of the following class (the "Commercial State Law Class"):

> All persons or entities who indirectly purchased Granulated Sugar from the Producing Defendants or co-conspirators in Alabama, Arizona, California, Colorado, Connecticut, the District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Maryland, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, and/or Vermont during the Class Period for use or resale in their business or organization.

26

75.     Specifically excluded from both the Nationwide Injunctive Relief Commercial Indirect Class and the Commercial State Law Class (collectively, the "Commercial Indirect Purchaser Classes") are: Defendants; any of their officers, directors, or employees; any entity in which any Defendant has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant; any federal, state, or local governmental entities; any judicial officer presiding over this action and the members of his or her immediate family and judicial staff; any juror assigned to this action; and any co-conspirator identified in this action.

76.     Plaintiff reserves the right to modify these definitions and/or to propose subclasses, as appropriate, based on further investigation and discovery.

77.     Numerosity. The members of the Commercial Indirect Purchaser Classes are so numerous that joinder of all members would be impracticable. The exact number of members in the Commercial Indirect Purchaser Classes is unknown to Plaintiffs at this time, but it is estimated to number in the millions. The members of the Commercial Indirect Purchaser Classes should be readily identifiable from existing records.

78.     Typicality. Plaintiff's claims are typical of the claims of the members of the Commercial Indirect Purchaser Classes because they were all similarly affected by Defendants' unlawful conduct in that they paid artificially inflated prices for Granulated Sugar purchased indirectly from one or more of the Producing Defendants or their producer co-conspirators, and therefore Plaintiff's claims arise from the same common course of conduct giving rise to the claims of the Commercial Indirect Purchaser Classes.

27

79.     <u>Adequacy</u>. Plaintiffs will fairly and adequately represent the interests of the members of the Commercial Indirect Purchaser Classes. Plaintiff's interests are coincident with, and not antagonistic to, those of the other class members. Plaintiff is represented by attorneys experienced in the prosecution of class action litigation generally, and in antitrust litigation specifically, who will vigorously prosecute this action on behalf of the Commercial Indirect Purchaser Classes.

80.     <u>Common Questions of Law and Fact Predominate</u>. Questions of law and fact common to the members of the Commercial Indirect Purchaser Classes predominate over questions that may affect only individual class members because Defendants have acted on grounds generally applicable to all class members. Common issues of fact and law include, but are not limited to, the following:

    (a) whether Defendants and their co-conspirators engaged in a combination or conspiracy to fix, raise, maintain, or stabilize the price of Granulated Sugar in the United States;

    (b) the duration of the conspiracy alleged herein and the acts performed by Defendants and their co-conspirators in furtherance of the conspiracy;

    (c) whether such combination or conspiracy violated the antitrust, unfair competition, and consumer protection laws of various states;

    (d) whether the conduct of Defendants and their co-conspirators, as alleged herein, caused injury to Plaintiff and other members of the Commercial Indirect Purchaser Classes;

    (e) whether Defendants caused Plaintiff and the members of the Commercial Indirect Purchaser Classes to suffer damages in the form of overcharges on Granulated Sugar indirectly purchased from the Producing Defendants or their producing co-conspirators;

28

(f) the effect of Defendants' conspiracy on Granulated Sugar prices sold in the United States during the Class Period;

(g) the appropriate measure of class-wide damages for the Commercial Indirect Purchaser Classes; and

(h) the nature of appropriate injunctive relief to restore competition in the U.S. market for Granulated Sugar.

81.    <u>Superiority</u>. A class action will permit numerous similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence, effort, or expense. A class action will provide injured persons a method for obtaining redress on claims that could not practicably be pursued individually. Moreover, the prosecution of separate actions by individual members of the Commercial Indirect Purchaser Classes would create a risk of inconsistent or varying adjudications, potentially establishing incompatible standards of conduct for Defendants. Plaintiffs know of no manageability or other issue that would preclude maintenance of this case as a class action.

82.    <u>Injunctive relief</u>. Defendants have acted or refused to act on grounds generally applicable to the members of the N Commercial Indirect Purchaser Classes, making injunctive and corresponding declaratory relief appropriate with respect to these classes as a whole pursuant to Federal Rule of Civil Procedure, Rule 23(b)(2).

## EQUITABLE TOLLING & FRAUDULENT CONCEALMENT

83.    Any applicable statute of limitations for Plaintiff's and the Commercial Indirect Purchaser Classes' claims as alleged in this Complaint were tolled by equitable estoppel due to Defendants' concealment of their unlawful combination and conspiracy.

29

84.     Plaintiff and the members of the Commercial Indirect Purchaser Classes did not have actual or constructive notice of the conspiracy alleged herein until, at the earliest, the DOJ's Findings of Fact in support of its petition to stop the merger of United and Imperial were made public. In particular, the full scope of Defendants' unlawful conduct could not have been discovered until the appellate exhibits from that matter were made available to the public.

85.     Throughout the Class Period and continuing until today, Defendants affirmatively and fraudulently concealed their unlawful conspiracy from Plaintiff and the members of the Commercial Indirect Purchaser Classes. That conspiracy was also inherently self-concealing.

86.     Plaintiff and the members of the Commercial Indirect Purchaser Classes all reasonably relied on Defendants' promises to conduct business ethically and in accordance with the law, which prevented them from discovering Defendants' unlawful conduct earlier.

87.     ASR Group's Code of Ethics and Business Conduct from January 22, 2020[28] states: "Throughout our long history, ASR Group has always been dedicated to conducting business in a lawful and ethical manner in all of its operations. … We seek success in all of our business endeavors. However, we may only do so while upholding the highest

---

[28] https://www.asr-group.com/sites/asr_group_com/files/2023-01/ASR%20Group%20-%20Code%20of%20Ethics%20and%20Business%20Conduct%20%282020-01-20%29%20English%20-%20Final%20-%20Website%20%281%29.pdf (las accessed 3/16/24).

standards of ethical conduct and all of the laws, domestic and foreign, that apply to our work." In addition, it contains a section devoted to "Following Antitrust and Competition Laws," which, among other things, prohibits ASR Group and its employees, officers, and directors from entering into "[p]rohibited agreements and activities," including "[a]greements with competitors to fix or control prices" and, "[t]o ensure that [they] avoid these illegal agreements, [they] may not engaged in direct or indirect discussions or other contacts with competitors regarding…[p]rices to be charged by ASR Group or others or regarding other terms and conditions of sales."

88.     Michigan Sugar's "Sustainability & Corporate Social Responsibility" webpage[29] states: "At Michigan Sugar Company, we live by our values – Excellence, Pride, Integrity, Compassion and Trust. This is the foundation of a business environment that sets respect and dignity for co-workers, suppliers, customers, and partners as an absolute expectation." It further states: "[W]e are committed to creating a responsible business model that serves and builds value for our grower-owners, employees, customers, suppliers, and other stakeholders now and in the future."[30]

89.     United's Code of Business Conduct and Ethics, updated March 16, 2020,[31] states: "Obeying the law, both in letter and in spirit, is the foundation on which our ethical

---

[29] https://www.michigansugar.com/about-us/sustainability-corporate-social-responsibility/ (last accessed 3/16/24).

[30] *Id.* (emphases added).

[31] https://unitedsugarpr.com/wp-content/uploads/2021/04/United-Sugars_-Code-of-Conduct-and-Ethics-Updated-March-2020.pdf (last accessed 3/16/24).

31

standards are built. All our employees, officers, directors, agents and other representatives must respect and obey the laws of the cities, states and countries in which we operate." It further states: "Our employees, officers, directors, agents and other representative must maintain the confidentiality of confidential information entrusted to them by us or our customers, except when disclosure is authorized in writing by a supervisor or required by laws or regulations. Confidential information includes, without limitation, any information that derives independent value because it is not known by third parties, including United Sugar's competitors or the general public, whether or not expressly identified as confidential."

## CLAIMS FOR RELIEF

### A. VIOLATION OF THE SHERMAN ACT

### COUNT 1
### VIOLATION OF 15 U.S.C. §§ 1 and 3
### (On behalf of the Nationwide Injunctive Relief Commercial Indirect Class)

90. Plaintiff re-alleges and incorporates by reference all the allegations above as if fully set forth herein.

91. From at least January 1, 2019, and continuing through the present, the exact dates being unknown to Plaintiff, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade artificially to fix, raise, and stabilize price for Granulated Sugar in the United States, including by restraining their respective production volumes, in violation of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3).

32

92.     In formulating and carrying out the alleged agreement, understanding, and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth above, and the fixing, raising, and stabilizing of the price of Granulated Sugar.

93.     The combination and conspiracy alleged herein has had the following effects, among others:

(a) Price competition in the sale of Granulated Sugar has been restrained, suppressed, and/or eliminated in the United States;

(b) Prices for Granulated Sugar sold, directly and indirectly, by Defendants and all of their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, noncompetitive levels throughout the United States; and

(c) Those who purchased Granulated Sugar indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition, resulting in artificially high prices paid for Granulated Sugar.

94.     Plaintiff and members of the Nationwide Injunctive Relief Commercial Indirect Class have been injured and will continue to be injured in their businesses and property by paying more for Granulated Sugar purchased indirectly from Defendants and their co-conspirators than they would have paid and will pay in the absence of the combination and conspiracy.

95.     Plaintiff and members of the Nationwide Injunctive Relief Commercial Indirect Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

33

**B.** **VIOLATIONS OF STATE ANTITRUST, UNFAIR COMPETITION, AND CONSUMER PROTECTION LAWS**

96.     Plaintiff re-alleges and incorporates by reference all the allegations above as if fully set forth herein.

97.     During the Class Period, Defendants and their co-conspirators entered and engaged in a contract, combination, or conspiracy to fix, stabilize, or maintain prices of Granulated Sugar sold in various states and to unreasonably restrain trade and commerce and harm consumers in violation of the various state antitrust and consumer protection laws set forth below.

98.     In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including: agreeing to fix, maintain, or stabilize Granulated Sugar prices, which injured Plaintiffs and members of the Commercial State Law Class; exchanging competitively sensitive information between and among Defendants; and participating in meetings conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

99.     Defendants and their co-conspirators engaged in actions described above for the purpose of carrying out their unlawful agreements to fix, increase, maintain, or stabilize Granulated Sugar prices at artificially high levels. As a direct and proximate result of Defendants' conduct, Plaintiff and members of the Commercial State Law Class were deprived of free and open competition and paid more to purchase Granulated Sugar than they otherwise would have in the absence of Defendants' unlawful conduct. This injury is

34

of the type that the antitrust and consumer protection laws of the below states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

100. In addition, Defendants have profited significantly from the conspiracy. Defendants' profits derived from their anticompetitive conduct and come at the expense of and to the detriment of Plaintiff and members of the Commercial State Law Class.

101. Accordingly, Plaintiff and the members of the Commercial State Law Class in each of the following jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by each particular jurisdiction's law, injunction (where applicable), and costs of suit, including reasonable attorneys' fees, to the extent permitted by the following state laws.

102. Defendants' anticompetitive acts described above were knowing and willful and constitute violations of the following state antitrust, unfair competition, and consumer protection statutes.

103. In the Counts that follow, a reference to the "Class" is a reference to the Commercial State Law Class unless otherwise specified.

## COUNT 2: ALABAMA
**(On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in Alabama)**

104. Due to Defendants' unlawful conduct, (1) competition for Granulated Sugar was restrained, suppressed, and eliminated within Alabama; (2) Granulated Sugar prices in the State of Alabama were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants'

agreement was an unlawful agreement to restrain trade in the State of Alabama in violation of ALA. CODE §6-5-60 *et seq*. Defendants' conspiracy substantially affected Alabama commerce and accordingly, as a direct and proximate result, Plaintiff and members of the Class have been injured in their business and property. Plaintiff and the members of the Class seek all forms of relief available under ALA. CODE §6-5-60 *et seq*.

### COUNTS 3 & 4: ARIZONA
**(On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in Arizona)**

105.    Defendants' conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Arizona; (2) prices of Granulated Sugar in the State of Arizona were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

106.    Defendants' agreement was an unlawful agreement to restrain trade in the State of Arizona in violation of ARIZ. REV. STAT. §44-1401 *et seq*. As a direct and proximate result, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all forms of relief available under ARIZ. REV. STAT. §44-1401 *et seq*.

107.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ARIZ. REV. STAT §44-1521 *et seq*. Defendants took efforts to conceal their agreements from Plaintiff and members of the Class and misled Plaintiff and

36

members of the Class into believing that prices for Granulated Sugar were set in a free and fair market. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all relief available under that statute.

## COUNTS 5 & 6: CALIFORNIA
**(On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in California)**

108.    Defendants' conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout California; (2) Granulated Sugar prices in the State of California were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected California commerce and consumers.

109.    Defendants have entered into an unlawful agreement in restraint of trade in violation of CAL. BUS. & PROF. CODE §16700 *et seq*. During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce. Each Defendant has acted in violation of CAL. BUS. & PROF. CODE §16720 to fix, stabilize, and maintain prices of Granulated Sugar. The violations of CAL. BUS. & PROF. CODE §16720 consisted, without limitation, of a continuing unlawful trust and concert of action among Defendants and their co-conspirators, the substantial terms of which were to fix, maintain, and stabilize prices of Granulated Sugar. For the purpose of forming and effectuating the unlawful trust,

37

Defendants and their co-conspirators have done those things which they combined and conspired to do, including, but not limited to, the acts, practices, and course of conduct set forth above, and fixing, raising, and stabilizing the price of Granulated Sugar. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. As a result of Defendants' violation of CAL. BUS. & PROF. §16720, Plaintiff and members of the Class seek treble damages and their cost of suit, including a reasonable attorneys' fee, pursuant to CAL. BUS. & PROF. §16750(a).

110.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of CAL. BUS. & PROF. §17200 *et seq*. Defendants took efforts to conceal their agreements from Plaintiff and members of the Class and misled Plaintiff and members of the Class into believing that prices for Granulated Sugar were set in a free and fair market. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all relief available under that statute.

### COUNTS 7 & 8: COLORADO
**(On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in Colorado)**

111.    Defendants' conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Colorado; (2) Granulated Sugar prices in the State of Colorado were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open

competition. During the Class Period, Defendants' illegal conduct substantially affected Colorado commerce and consumers.

112.    Defendants have violated COLO. REV. STAT. §6-4-101 *et seq*. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all forms of relief available under violated Colo. Rev. Stat. §6-4-101, *et seq.*

113.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of COLO. REV. STAT. §6-1-101 *et seq.* Defendants took efforts to conceal their agreements from Plaintiff and members of the Class and misled Plaintiff and members of the Class into believing that prices for Granulated Sugar were set in a free and fair market. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all relief available under that statute.

<u>COUNT 9: CONNECTICUT</u>
**(On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in Connecticut)**

114.    Defendants have entered into an unlawful agreement in restraint of trade in violation of CONN. GEN. STAT. §35-24 *et seq*. Defendants' combinations or conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout Connecticut, and (2) Granulated Sugar prices in the State of Connecticut were fixed, controlled, and maintained at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period,

Defendants' illegal conduct substantially affected Connecticut commerce. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of CONN. GEN. STAT. §35-24 *et seq*. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all forms of relief available under CONN. GEN. STAT. §35-24 *et seq.*

## COUNTS 10 & 11: DISTRICT OF COLUMBIA
**(On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in District of Columbia)**

115.     Defendants' combinations or conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminate throughout the District of Columbia; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; and (3) Plaintiff and members of the Class, including those who resided in the District of Columbia and purchased Granulated Sugar in the District of Columbia, paid supracompetitive, artificially inflated prices for Granulated Sugar. During the Class Period, Defendants' illegal conduct substantially affected commerce in the District of Columbia.

116.     Defendants have entered into agreements in restraint of trade in violation of D.C. CODE §28-4501 *et seq*. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all forms of relief available under D.C. CODE §28-4501 *et seq*.

40

117. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. CODE § 28-3901 *et seq.* Defendants took efforts to conceal their agreements from Plaintiff and members of the Class and misled Plaintiff and members of the Class into believing that prices for Granulated Sugar were set in a free and fair market. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all relief available under that statute.

**COUNTS 12 & 13: FLORIDA**
**(On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in Florida)**

118. Through their actions and actions of co-conspirators, Granulated Sugar prices in the State of Florida were raised, fixed, maintained, and stabilized at artificially high level, thereby injuring Plaintiff and the Class. Throughout the Class Period, competition in the Granulated Sugar market was restrained, suppressed, and eliminated throughout Florida. Plaintiff and members of the Class, including those who purchased Granulated Sugar in the State of Florida, paid supracompetitive, artificially inflated prices for Granulated Sugar. During the Class Period, Defendants' illegal conduct substantially affected commerce in Florida.

119. Defendants have violated the FLA. STAT. §542.15 *et seq.*, through their anticompetitive actions. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property.

41

Accordingly, Plaintiff and members of the Class seek all forms of relief available under FLA. STAT. §542.15 *et seq.*

120.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of FLA. STAT. §501.201 *et seq.* Defendants took efforts to conceal their agreements from Plaintiff and members of the Class and misled Plaintiff and members of the Class into believing that prices for Granulated Sugar were set in a free and fair market. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all relief available under that statute.

<u>COUNT 14: HAWAII</u>
**(On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in Hawaii)**

121.    Defendants have violated HAW. REV. STAT. §480-1 *et seq.*, through their actions. *See* HAW. REV. STAT. §§480-4, 480-13. Through Defendants' actions and the actions of their co-conspirators, Granulated Sugar prices in the State of Hawaii were raised, fixed, maintained, and stabilized at artificially high levels, thereby injuring Plaintiff and the Class. Throughout the Class Period, price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of Hawaii. Plaintiff and members of the Class, including those who resided in the State of Hawaii and purchased Granulated Sugar in Hawaii, paid supracompetitive, artificially inflated prices for their Granulated Sugar. During the Class Period, Defendants' illegal conduct substantially affected commerce in Hawaii. As a direct and proximate result of Defendants' unlawful

42

conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all forms of relief available under HAW. REV. STAT. ANN. §480-1 *et seq*.

**COUNTS 15 & 16: ILLINOIS**
**(On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in Illinois)**

122.    Defendants' combinations or conspiracies had the following effects: (1) price competition in the Granulated Sugar market was restrained, suppressed, and eliminated throughout the State of Illinois, and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the State of Illinois. During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce.

123.    Defendants have entered into agreements in restraint of trade in violation of 740 ILL. COMP. STAT. 10/1 *et seq*. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all forms of relief available under 740 ILL. COMP. STAT. 10/1 *et seq*.

124.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILL. COMP. STAT. 505/1 *et seq*, and 720 ILL. COMP. STAT. 295/1a. Defendants took efforts to conceal their agreements from Plaintiff and members of the Class and misled Plaintiff and members of the Class into believing that prices for Granulated Sugar were set in a free and fair market. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in

43

their business and property. Accordingly, Plaintiff and members of the Class seek all relief available under that statute.

## COUNT 17: IOWA
**(On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in Iowa)**

125.    Defendants have entered into an unlawful agreement in restraint of trade in violation of IOWA CODE §553.1 *et seq.* Defendants' combinations or conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of Iowa, and (2) Granulated Sugar prices were raised, fixed, maintained and stabilized at artificially high levels throughout the State of Iowa. During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of IOWA CODE §553.1 *et seq*. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all forms of relief available under IOWA CODE §553.1 *et seq.*

## COUNT 18: KANSAS
**(On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in Kansas)**

126.    Defendants have entered into an unlawful agreement in restraint of trade in violation of KAN. STAT. §50-101 *et seq*. Defendants' combinations or conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of Kansas; (2) Granulated Sugar prices in

44

the State of Kansas were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all forms of relief available under KAN. STAT. §50-101 *et seq*.

**COUNT 19: MAINE**
**(On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in Maine)**

127.    Defendants have entered into an unlawful agreement in restraint of trade in violation of ME. STAT. TIT. 10, §1101. Defendants' combinations or conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of Maine; and (2) Granulated Sugar prices in the State of Maine were raised, fixed, maintained, and stabilized at artificially high levels. During the Class Period, Defendants' illegal conduct substantially affected Maine commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all relief available under ME. STAT. TIT. 10, §1104.

**COUNTS 20 & 21: MARYLAND**
**(On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in Maryland)**

128.    Defendants' combinations or conspiracies detrimentally affected the price competition in the State of Maryland for Granulated Sugar by restraining, suppressing, and

eliminating competition. Further, Defendants' unlawful conduct raised, fixed, maintained, and stabilized Granulated Sugar prices in the State of Maryland at artificially high levels. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. During the Class Period, Defendants' illegal conduct substantially affected Maryland commerce.

**COUNTS 22 & 23: MICHIGAN**
**(On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in Michigan)**

129.    Defendants' combinations or conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of Michigan, and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the State of Michigan. During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

130.    Defendants have entered into an unlawful agreement in restraint of trade in violation of MICH.COMP. LAWS §445.771 *et seq*. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all relief available under MICH. COMP. LAWS §445.771 *et seq*.

131.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MICH. COMP. LAWS §445.903 *et seq*. Defendants took efforts to conceal their agreements from Plaintiff and members of the Class and misled Plaintiff and members of the Class into believing that prices for Granulated Sugar were set in a free

and fair market. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all relief available under that statute.

## COUNTS 24 & 25: MINNESOTA
### (On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in Minnesota)

132.    Through their actions and actions of co-conspirators, Granulated Sugar prices in the State of Minnesota were raised, fixed, maintained, and stabilized at an artificially high level, thereby injuring Plaintiff and the Class.  Throughout the Class Period, price competition in the market for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of Minnesota. Plaintiff and members of the Class, including those who resided in the State of Minnesota and purchased Granulated Sugar there, paid supracompetitive, artificially inflated prices for Granulated Sugar.  During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of Minnesota.

133.    Defendants have violated the MINN. STAT. §325D.49 *et seq*., through their anticompetitive actions.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all forms of relief available under MINN. STAT. §325D.49 *et seq*.

134.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation MINN. STAT. §325d.43-48 *et seq*. Defendants took efforts to

47

conceal their agreements from Plaintiff and members of the Class and misled Plaintiff and members of the Class into believing that prices for Granulated Sugar were set in a free and fair market. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all relief available under that statute.

### COUNT 26: MISSISSIPPI
**(On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in Mississippi)**

135.     Defendants have entered into an unlawful agreement in restraint of trade in violation of MISS. CODE §75-21-1 *et seq. See* MISS. CODE §75-57-63. Defendants' combinations or conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of Mississippi, and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the State of Mississippi. During the Class Period, Defendants' illegal conduct substantially affected the State of Mississippi commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiffs and members of the Class seek all relief available under MISS. CODE §75-21-1 *et seq*., and MISS. CODE §75-57-63.

## COUNTS 27 & 28: NEBRASKA
### (On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in Nebraska)

136.    Defendants' combinations or conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of Nebraska, and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the State of Nebraska. During the Class Period, Defendants' illegal conduct substantially affected the State of Nebraska commerce.

137.    Defendants restrained trade and commerce in the State of Nebraska by entering into an unlawful agreement in violation of NEB. REV. STAT. §59-801 *et seq*.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all relief available under NEB. REV. STAT. §59-801 *et seq*.

138.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of NEB. REV. STAT. §59-1601 *et seq*. Defendants took efforts to conceal their agreements from Plaintiff and members of the Class and misled Plaintiff and members of the Class into believing that prices for Granulated Sugar were set in a free and fair market. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all relief available under that statute.

49

## COUNTS 29 & 30: NEVADA
### (On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in Nevada)

139.    Defendants' conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of Nevada; (2) Granulated Sugar prices in the State of Nevada were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition.

140.    Defendants violated the NEV. REV. STAT. §598A.210 *et seq*., by entering into unlawful agreement in restraint of trade in the State of Nevada. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. As a result of Defendants' violation of NEV. REV. STAT. §598A.210 *et seq*. Plaintiff and members of the Class seek treble damages and their cost of suit, including a reasonable attorneys' fee, pursuant to NEV. REV. STAT. §598A.210.

141.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of NEV. REV. STAT. §598.0903 *et seq.* Defendants took efforts to conceal their agreements from Plaintiff and members of the Class and misled Plaintiff and members of the Class into believing that prices for Granulated Sugar were set in a free and fair market. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all relief available under that statute.

**(On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in New Hampshire)**

142.    Defendants' combinations or conspiracies detrimentally affected the price competition in the State of New Hampshire Granulated Sugar market by restraining, suppressing, and eliminating competition.   Further, Defendants' unlawful conduct raised, fixed, maintained, and stabilized Granulated Sugar prices in the State of New Hampshire at artificially high levels. During the Class Period, Defendants' illegal conduct substantially affected the State of New Hampshire commerce.

143.    Defendants have entered into an unlawful agreement in restraint of trade in violation of N.H. REV. STAT. §356:1 *et seq.*   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all relief available under N.H. REV. STAT. §356:1 *et seq.*

144.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. REV. STAT. §358-A:1 *et seq.* Defendants took efforts to conceal their agreements from Plaintiff and members of the Class and misled Plaintiff and members of the Class into believing that prices for Granulated Sugar were set in a free and fair market. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all relief available under that statute.

51

## COUNTS 33 & 34: NEW MEXICO
### (On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in New Mexico)

145. Defendants' combinations or conspiracies detrimentally affected the price competition in the State of New Mexico for Granulated Sugar by restraining, suppressing, and eliminating competition. Further, Defendants' unlawful conduct raised, fixed, maintained and stabilized Granulated Sugar prices in the State of New Mexico at artificially high levels. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of New Mexico.

146. Defendants violated the N.M. STAT. §57-1-1 *et seq.*, by entering into unlawful agreement in restraint of trade in the State of New Mexico. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and Members of the Class seek all relief available under N.M. STAT. §57-1-1 *et seq.*

147. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. STAT. §57-12-1 *et seq.* Defendants took efforts to conceal their agreements from Plaintiff and members of the Class and misled Plaintiff and members of the Class into believing that prices for Granulated Sugar were set in a free and fair market. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all relief available under that statute.

## COUNT 35: NEW YORK
### (On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in New York)

148.    Defendants have entered into an unlawful agreement in restraint of trade in violation of N.Y. GEN. BUS. LAW §340 *et seq.* Defendants' combinations or conspiracies had the following effects: (1) price competition in the market for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of New York, and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the State of New York. During the Class Period, Defendants' illegal conduct substantially affected the State of New York commerce. The conduct set forth above is a *per se* violation of the Donnelly Act, N.Y. GEN. BUS. LAW §340 *et seq.* As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all relief available under N.Y. GEN. BUS. LAW §340 *et seq.*

## COUNT 36: NORTH CAROLINA
### (On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in North Carolina)

149.    Defendants have entered into an unlawful agreement in restraint of trade in violation of N.C. GEN. STAT. §75-1 *et seq.* Defendants' combinations or conspiracies had the following effects: (1) price competition in the market for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of North Carolina, and (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the State of North Carolina. During the Class Period, Defendants' illegal

conduct substantially affected the State of North Carolina commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all relief available under N.C. GEN. STAT. §75-1 *et seq*.

<u>**COUNT 37: NORTH DAKOTA**</u>
**(On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in North Dakota)**

150. Defendants' actions have violated the N.D. CENT. CODE §51-08.1-01 *et seq*. through their anticompetitive actions. Through their actions and actions of co-conspirators, Granulated Sugar prices in the State of North Dakota were raised, fixed, maintained, and stabilized at artificially high level, thereby injuring Plaintiff and the Class. Throughout the Class Period, price competition in the market for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of North Dakota. Plaintiff and members of the Class, including those who resided in the State of North Dakota and purchased Granulated Sugar there, paid supracompetitive, artificially inflated prices. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of North Dakota. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all forms of relief available under N.D. CENT. CODE §51-08.1-01 *et seq*.

## COUNTS 38 & 39: OREGON
### (On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in Oregon)

151.    Defendants' combinations or conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of Oregon; (2) Granulated Sugar prices in the State of Oregon were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected the State of Oregon commerce.

152.    Defendants have entered into an unlawful agreement in restraint of trade in violation of OR. REV. STAT. §646.725 *et seq*. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all forms of relief available under OR. REV. STAT. §646.725 *et seq*.

153.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of OR. REV. STAT. §646.605 *et seq*. Defendants took efforts to conceal their agreements from Plaintiff and members of the Class and misled Plaintiff and members of the Class into believing that prices for Granulated Sugar were set in a free and fair market. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all relief available under that statute.

## COUNT 40 & 41: RHODE ISLAND
### (On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in Rhode Island)

154.     Defendants' combinations or conspiracies detrimentally affected price competition in the Granulated Sugar market in the State of Rhode Island by restraining, suppressing, and eliminating competition. Further, Defendants' unlawful conduct raised, fixed, maintained, and stabilized Granulated Sugar prices in the State of Rhode Island at artificially high levels. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of Rhode Island.

155.     Defendants have entered into an unlawful agreement in restraint of trade in violation of R.I. GEN. LAWS §6-36-7 *et seq*. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and Members of the Class seek all relief available under R R.I. GEN. LAWS §6-36-7 *et seq*.

156.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. GEN. LAWS §6-13.1-1. Defendants took efforts to conceal their agreements from Plaintiff and members of the Class and misled Plaintiff and members of the Class into believing that prices for Granulated Sugar were set in a free and fair market. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all relief available under that statute.

56

## COUNTS 42 & 43: SOUTH DAKOTA
### (On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in South Dakota)

157.    Through their actions and actions of co-conspirators, Granulated Sugar prices in the State of South Dakota were raised, fixed, maintained, and stabilized at artificially high level, thereby injuring Plaintiff and the Class. Throughout the Class Period, price competition in the market for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of South Dakota. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of South Dakota. Plaintiff and members of the Class, including those who resided in the State of South Dakota and purchased Granulated Sugar there, paid supracompetitive, artificially inflated prices for their Granulated Sugar.

158.    Defendants have violated S.D. CODIFIED LAWS §37-1-3.1 *et seq*., through their anticompetitive actions. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all forms of relief available under S.D. CODIFIED LAWS §37-1-3.1 *et seq.*

159.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. CODIFIED LAWS §37-24-1 *et seq*. Defendants took efforts to conceal their agreements from Plaintiff and members of the Class and misled Plaintiff and members of the Class into believing that prices for Granulated Sugar were set in a free and fair market. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff

and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all relief available under that statute.

## COUNT 44: TENNESSEE
**(On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in Tennessee)**

160.     Defendants have entered into an unlawful agreement in restraint of trade in violation of TENN. CODE §47-25-101 *et seq*. Defendants' combinations or conspiracies had the following effects: (1) price competition for the sale of Granulated Sugar, a tangible good, was restrained, suppressed, and eliminated throughout the State of Tennessee; (2) prices for Granulated Sugar, a tangible good, in the State of Tennessee were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of Tennessee. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all forms of relief available under TENN. CODE §47-25-101 *et seq.*

## COUNT 45: UTAH
**(On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in Utah)**

161.     Defendants violated the UTAH CODE §76-10-3101 *et seq*. by entering into unlawful agreement in restraint of trade in the State of Utah. Specifically, Defendants' combinations or conspiracies detrimentally affected price competition in the Granulated Sugar market in the State of Utah by restraining, suppressing, and eliminating competition.

58

Further, Defendants' unlawful conduct raised, fixed, maintained, and stabilized Granulated Sugar prices in Utah at artificially high levels. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of Utah. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and Members of the Class seek all relief available under UTAH CODE §76-10-3101 *et seq.*

## COUNT 46: VERMONT
### (On behalf of Commercial State Law Class Members That Purchased Granulated Sugar in Vermont)

162. Defendants combinations or conspiracies had the following effects: (1) price competition for Granulated Sugar was restrained, suppressed, and eliminated throughout the State of Vermont; (2) Granulated Sugar prices in the State of Vermont were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants have entered into an unlawful agreement in restraint of trade in violation of VT. STAT. ANN. TIT. 9, §2453 *et seq*. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of Vermont. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property. Accordingly, Plaintiff and members of the Class seek all forms of relief available under VT. STAT. ANN. TIT. 9, §2465 *et seq*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Commercial Indirect Purchaser Classes defined herein, respectfully request that this Court:

A.      Certify this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiff and its attorneys to represent the Commercial Indirect Purchaser Classes.

B.      Adjudge and decree that the acts of Defendants are illegal and unlawful, including the agreement, contract, combination, or conspiracy, and acts done in furtherance thereof by Defendants and their co-conspirators be adjudged to have been a *per se* violation (or alternatively illegal as a quick look or full-fledged rule of reason violation) of various state antitrust and competition laws as alleged above.

C.      Permanently enjoin and restrain Defendants, their affiliates, successors, transferees, assignees, and other officers, directors, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, from in any manner continuing, maintaining, or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect.

D.      Enter judgment against Defendants, jointly and severally, and in favor of Plaintiffs and members of the Commercial State Law Class for treble the amount of damages sustained by Plaintiff and the Commercial State Law Class as allowed by law, together with costs of the action, including reasonable attorneys' fees, pre- and post-

60

judgment interest at the highest legal rate from and after the date of service of this Complaint to the extent provided by law.

E. Grant such other and further relief as the Court deems just and appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

163. Plaintiff hereby demands a trial by jury, pursuant to Federal Rule of Civil Procedure 38(b), for all claims and issues so triable.


Dated: April 16, 2024                 Respectfully submitted,

*/s/ J. Nathan Duggins III*
J. Nathan Duggins III
**TUGGLE DUGGINS P.A.**
400 Bellemeade Street, Suite 800
P.O. Box 2888 – 27402
Greensboro, NC 27401
Tel: (336) 271-5246
Fax: (336) 274-6590
NDuggins@tuggleduggins.com

Mindee J. Reuben (*pro hac vice* forthcoming)
Steven J. Greenfogel (*pro hac vice* forthcoming)
**LITE DEPALMA GREENBERG & AFANADOR, P.C.**
1515 Market Street, Suite 1200
Philadelphia, PA 19102
Tel: (215) 854-4060
MJR Direct: (215) 704-2524
Fax: (973) 623-0858
mreuben@litedepalma.com
sgreenfogel@litedepalma.com

61

Joseph J. DePalma (*pro hac vice* forthcoming)
**LITE DEPALMA GREENBERG &**
**AFANADOR, P.C.**
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
jdepalma@litedepalma.com

*Counsel for Plaintiff, SAM Restaurants, Inc. d/b/a*
*Carolina's Diner*